**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARLINGTON SPECIALTIES, INC., d/b/a PINCH PROVISIONS, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. _____ |
| v. | ) ) | |
| GMA ACCESSORIES, INC., d/b/a CAPELLI NEW YORK and GLG INVESTMENT GROUP, INC. | ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | | |

## COMPLAINT

Plaintiff ARLINGTON SPECIALTIES, INC., d/b/a PINCH PROVISIONS ("**Pinch Provisions**" or "**Plaintiff**"), by and through its attorneys, complains against Defendants GMA ACCESSORIES, INC., d/b/a CAPELLI NEW YORK ("**GMA**") and GLG INVESTMENT GROUP, INC. ("**GLG**," together with GMA, "**Defendants**") as follows:

## NATURE OF THE ACTION

1. This is an action for trade dress infringement, trademark infringement, counterfeiting and unfair competition, all pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq*; unfair trade practices under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 *et seq.*; consumer fraud and deceptive business practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq.*; and breach of contract and tortious interference pursuant to Illinois state law. Pinch Provisions seeks preliminary and permanent injunctive relief and other equitable relief; an order directing Defendants to surrender for destruction all infringing and/or counterfeit materials; and damages, costs and fees.

2.     This action arises from, *inter alia*, Defendants' alteration and defacement of legitimate Pinch Provisions' products to create counterfeits, GLG's blatant breach of contract terms applicable to it as a former customer of Pinch Provisions, as well as Defendants' trademark infringement and misappropriation of trade dress owned and used for years by Pinch Provisions in connection with Pinch Provisions' "survival kit" products, in order for Defendants to offer a knockoff product to consumers and interfere with Pinch Provisions' prospective retailer relationships.  In violation of federal and state law, Defendants have blatantly and intentionally infringed, and are continuing to infringe, Pinch Provisions' intellectual property in connection with the advertising and sale of directly competing goods.

## <u>PARTIES</u>

3.     Plaintiff is an Illinois corporation with a principal business address of P.O. Box 1353, Arlington Heights, Illinois 60006, registered to do business as "Pinch Provisions."  Pinch Provisions is a privately-owned business that specializes in beauty, fashion, first-aid, grooming, and personal care products, namely, portable "survival kits."  Pinch Provisions distributes its products to specialty and high-end retailers, and also sells online, including at a website with the following URL: http://www.pinchprovisions.com.

4.     Defendant GMA ACCESSORIES, INC. is a New York corporation with its principal place of business located at 1 East 33rd Street, Floor 9, New York, New York 10016.  Defendant GMA is doing business as "Capelli New York," "Capelli of New York" and "Capelli."

5.     Defendant GLG INVESTMENT GROUP INC. is a New Jersey corporation with its principal place of business located at 3 Empire Boulevard, South Hackensack, New Jersey 07606.  In addition to doing business as "GLG Investment Group," Defendant GLG also does

business as "Laila Rowe."   In addition, GLG is an affiliate of GMA ACCESSORIES, INC., sharing business addresses, and run and owned by the same individuals.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 (actions arising under 15 U.S.C., Chapter 22 – Trademarks), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks), and 28 U.S.C. § 1367 (supplemental jurisdiction).

7.     This Court has personal jurisdiction over Defendants because Defendants do business in Illinois, offer their products in Illinois retail stores, and contract with retailers based in Illinois, such that Defendants have a reasonable expectation of being haled into court in Illinois.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), (b) and (c) because Defendants do business in this District and Defendants are subject to personal jurisdiction in this District at the time this action is being commenced.

## THE MINIMERGENCY MARK & DRESS

9.     Originally doing business as "Ms. & Mrs.," Pinch Provisions is the leading purveyor of personal care kits and premium emergency essentials, combining the sensibility of a beauty or fashion brand with the practicality of a general store.   For nine years, the privately-held, Chicago-based company has created chic but useful personal care kits for women and the men they love.   Plaintiff offers a variety of personal care "survival kits" and "emergency essentials" for women, men, girls, mothers, students and wedding parties.   In 2012, Plaintiff rebranded itself as "Pinch Provisions," and moved its website to a new domain, <www.pinchprovisions.com>.   Under the new name, Plaintiff continues to offer the same broad array of survival kits and personal care products.

10.     Plaintiff began selling its first survival kit product, known as the "Working Girl's Survival Kit," in 2004, followed by the "Shemergency Survival Kit" in 2007, which included twenty-five essentials for women.  Then, in July 2008, Plaintiff introduced a mini version of its "Shemergency" kit called the "Minimergency Survival Kit"—or "Minimergency" for short.  The Minimergency kit has since become one the company's flagship items.

11.     The Minimergency kit contains seventeen "must-haves" for women on-the-go, including a tiny bottle of hairspray, clear nail polish, polish remover, an emery board, lip balm, clear elastics, earring backs, a mending kit and safety pin, double-sided tape, stain remover, a deodorant towelette, pain reliever, a tampon, breath freshener, lip balm, dental floss and an adhesive bandage:



12.     The kit, which generally retails for $13-16, is small enough to easily fit in the palm of the hand, a purse or a desk drawer:



13.   Since 2008, Plaintiff has consistently sold its mini survival kits in its distinctive and nonfunctional packaging trade dress, featuring a transparent outer box and a soft inner pouch with folded and tucked corners and a tabbed zipper. The inner pouch is available in a variety of fashion colors and finishes.  The transparent outer box is more expensive than other types of packaging, but makes the colorful inner pouch visible, allowing it to serve as part of the overall packaging design.  Both the distinctive shape and construction of the inner pouch and the overall package incorporating the transparent outer box with the inner pouch visible (together, the "**Minimergency Dress**") are easily recognized by consumers as indicating products from Plaintiff.  Although Plaintiff has changed its logos and trade name over the years, its use of the MINIMERGENCY mark and distinctive packaging dress has always been consistent:





14.     Since the introduction of the original Minimergency kit in 2008, Pinch Provisions has expanded its product line to include a wide variety of "MINIMERGENCY" branded survival kits (collectively, the "**Minimergency Kits**") directed to both women and girls, and suited for special occasions and social situations, from work and school to weddings and motherhood. Each Minimergency Kit includes a different assortment of beneficial products, bears the MINIMERGENCY mark and is offered in the same Minimergency Dress. True and correct copies of some of the expanded line of products are depicted below:

 

 

15.     Pinch Provisions has also entered into a strategic co-branding relationship with high-end retailer J.Crew, and began offering special "J.Crew editions" of the well-known Minimergency Kit in 2012. Like the other Minimergency Kits, the J.Crew version of the kit features the distinctive Minimergency Dress, in colors that coordinate with J.Crew seasonal fashions, and the advertising materials for the product draw attention to the Minimergency Dress:



16.     Pinch Provisions is currently exploring other possible co-branding relationships with third parties.  Many well-known fashion brands and retail chains have expressed interest in doing a "special" co-branded version of the Minimergency Kit, provided that the distinctive and immediately recognizable Minimergency Dress is used with the end product.  Pinch Provisions has literally fielded hundreds of requests to create customized or private label versions of its popular Minimergency Kits.  But in order to maintain the quality reputation of its products, and to ensure that any co-branded product lives up to its high standards and does not dilute the goodwill enjoyed by its Minimergency Kits, Pinch Provisions has been extremely selective about whom it chooses to do business with.  Indeed, it currently has a vendor application process which allows it to screen potential vendors before agreeing to sell to them.

17.     Pinch Provisions has dedicated significant resources to develop its brand and Minimergency Kit products.  Accordingly, it owns U.S. federal service mark Registration No. 3,732,328 on the MINIMERGENCY mark, which issued on December 29, 2009 and covers use

of the mark in connection with "novelty kits for women". (A true and correct copy of the MINIMERGENCY trademark registration certificate is attached hereto as **Exhibit A**.)

18. Pinch Provisions has also filed federal applications, currently pending, covering its inherently distinctive and nonfunctional packaging trade dress:



19. Both the MINIMERGENCY mark and the Minimergency Dress are used in interstate commerce in connection with and to identify the family of Pinch Provisions Minimergency Kits. Both the mark and the dress are inherently distinctive, but have also acquired substantial secondary meaning.

20. Survival kits bearing the MINIMERGENCY mark and the Minimergency Dress have been featured in numerous magazines and on television shows throughout the country. For example, Minimergency Kits have been featured in editorial content in *The New York Times* as well as over one hundred magazines of national circulation, including without limitation *Shape, InStyle, Women's Health, People, Health, Real Simple, All You, Parents, Good Housekeeping, Marie Claire, Pregnancy & Newborn, Family Circle, Cooking Light, Glamour, Travel + Leisure, Star, Destination Weddings* and others. Most of these publications have not only referenced Pinch Provisions' product, but have prominently featured the Minimergency Dress:



Above are the company's Minimergency personal care kits, before and after the change.

21.     Minimergency Kits featuring the MINIMERGENCY mark and Minimergency Dress have also been featured on hundreds of blogs, social media sites and other websites devoted to women's beauty and fashion.

22.     In addition to print coverage, Minimergency Kits have received coverage on national television talk shows.   For example, the original MINIMERGENCY product was prominently featured on NBC's *Today Show* as part of a segment which originally aired on December 18, 2008.  The following screen capture, in which the Minimergency Dress is clearly recognizable, is taken from that segment, which remains available as of the filing of this Complaint at URL http://today.msnbc.msn.com/id/26184891/vp/28296579#28296579:



23.     Pinch Provisions has expended, and continues to expend, a significant amount of time and money to advertise, market, and promote its Minimergency Kits and its distinctive Minimergency Dress.   As a result, the distinctive MINIMERGENCY mark and the Minimergency Dress have been and continue to be recognized by the public as originating with Pinch Provisions.  The MINIMERGENCY mark and the Minimergency Dress distinguish the emergency kits offered by Pinch Provisions from the competing goods of others, and indeed no other competitor has adopted a similar trade dress or uses the term "mini" in connection with "emergency kit."

24.     Pinch Provisions, through its years of continuous use, significant marketing efforts and sales of quality survival kit products through out the U.S., has acquired and enjoys substantial goodwill and a valuable nationwide reputation through the distinctive MINIMERGENCY mark and nonfunctional Minimergency Dress.

25.     Pinch Provisions has ensured that the materials that make up its Minimergency Kits are of the highest quality, and many of the components are made especially for Pinch Provisions and according to its specifications.  The Minimergency Kits are proudly made in the U.S.A., with U.S. and international components.  Pinch Provisions has refused to decrease the quality of the items included in its kits in order to offer the kits at a lower price point.

26.     Pinch Provisions is the sole distributor of its products, and it requires all of its wholesale customers to agree to its Vendor Policy (*see* **Exhibit B**), a binding contract which prohibits the sale of its products through third party websites (auction sites, marketplaces, flash sale sites, mass-market e-tailers such as Amazon.com, etc.) or the resale of its products to anyone other than an end consumer.  The Vendor Policy further requires that Minimergency Kits must be sold in their original packaging, and wholesale customers may not alter the packaging in any way or remove items from the package.  Pinch Provisions carefully monitors and oversees its vendors to ensure compliance with the terms of the Vendor Policy; Pinch Provisions considers any material violation of the terms of the Vendor Policy to be a breach of contract.

27.     Pinch Provisions is a high-growth company that manages its growth in order to protect its brand.  To maintain the reputation for quality and exclusiveness enjoyed by its Minimergency Kits, Pinch Provisions has been careful and deliberate in the way it has marketed the products and expanded the line.  Pinch Provisions has focused on high-end retailers such as J. Crew, Sephora, Neiman Marcus and Nordstrom to emphasize the cache of its products.  Over the years, Pinch Provisions has been approached by various discount stores, factory outlets and drugstore chains, but has declined to make its products available through these types of retailers.  Accordingly, Minimergency Kits are viewed by the public as desirable, fashion-forward products that are available only in limited quantities from select retailers.

**DEFENDANTS GMA AND GLG**

28.     Defendant GLG oversees the operation of retail chain Laila Rowe, which sells a variety of women's jewelry and fashion accessory items.

29.     GLG operates approximately twenty Laila Rowe "brick-and-mortar" retail stores. At the Laila Rowe stores, GLG offers LAILA ROWE-branded merchandise and CAPELLI NEW YORK-branded products manufactured and/or imported by Defendant GMA, along with a variety of third party products.

30.     GLG also owns and operates a website available at URL http://www.lailarowe.com ("**LailaRowe.com**").  At LailaRowe.com, GLG provides information about its retail stores and directs traffic to the online store available at http://www.eRetailMall.com ("**eRetailMall.com**"), which on information and belief is owned and operated by GMA.

31.     GMA is a distributor of women's and children's accessories and clothing.  GMA sells its products through GLG's Laila Rowe stores, has strategic relationships with major national retailers and e-tailers, and offers products online via eRetailMall.com.  Many of GMA's products are offered under the "CAPELLI NEW YORK" mark, which is owned by GMA.

32.     Beginning in April 2011, GLG purchased Minimergency Kits from Plaintiff for sale in Laila Rowe stores.  As a condition of sale, GLG had to agree to Pinch Provisions' Vendor Policy.  In its credit application with Pinch Provisions, GLG has identified GMA as a "trade reference."

**DEFENDANTS' INFRINGEMENT**

33.     In August 2012, Pinch Provisions found some of its "Good Luck" style Minimergency Kits for sale at retail chain Bed Bath & Beyond.   But Plaintiff does not have a direct business relationship with Bed Bath & Beyond.  Furthermore, Pinch Provisions prohibits

its wholesale customers from distributing its products to any third party retailers. Thus Plaintiff was extremely surprised to discover that Bed Bath & Beyond had Minimergency Kits on its shelves. Worse, the relevant Minimergency Kits had been stickered with labels bearing the CAPELLI NEW YORK mark owned by GMA:



34.     Pinch Provisions has never entered into a co-branding relationship with GMA, and has never authorized the application of CAPELLI NEW YORK stickers to any of its products; indeed, the Pinch Provisions Vendor Policy expressly prohibits **any** alteration of Minimergency Kit packaging.

35.     Pinch Provisions was aware of the affiliation between GLG and GMA and thus assumed that GLG was the source (whether directly or indirectly) of the Minimergency Kits improperly bearing GMA's CAPELLI NEW YORK mark (these kits, collectively, the "**Counterfeit Kits**"). Therefore, counsel for Pinch Provisions wrote to GLG, putting GLG on notice of Plaintiff's rights and requesting that GLG provide an explanation for the Counterfeit Kits (*see* **Exhibit C** hereto). In the meantime, Plaintiff refused to ship additional product to GLG until the matter could be resolved.

36.     Shortly after its counsel wrote to GLG, Pinch Provisions' representatives visited Bed Bath & Beyond again and observed that some of the CAPELLI NEW YORK stickers had been removed from the Counterfeit Kits.   But GLG never responded to counsel's letter or otherwise provided any explanation for the Counterfeit Kits.   Accordingly, although GLG had an open order, Pinch Provisions has declined to fill it.

37.     In February 2013, Pinch Provisions learned that Defendant GMA was offering a new survival kit product that directly competes with Plaintiff's products.   GMA's copycat survival kit product (the "**Knockoff Kit**") is of almost identical size to the Pinch Provisions Minimergency Kits, and appropriates the Minimergency Dress, including both the transparent outer box and the distinctively folded and structured inner pouch (these elements together as present in the Knockoff Kit, the "**Infringing Dress**"):



38.     The Knockoff Kit is currently being sold at Ulta retail stores.   Prior to Plaintiff discovering the Knockoff Kit, Ulta had been in contact with Plaintiff regarding a possible business relationship.   It is clear, however, that a partnership between Pinch Provisions and Ulta is not feasible as long as Ulta is selling an infringing copy of the Minimergency Kit.

39.     The Knockoff Kit has also been sold online at Amazon.com and Ulta.com, and presumably elsewhere.   Although the product itself is labeled "Emergency Beauty Kit," it has

been advertised online as a MINI BEAUTY EMERGENCY KIT and/or a MINI EMERGENCY KIT (the "**Infringing Mark**") prominent type:



40.     Defendants' prominent use of the terms "mini" and "emergency" together is clearly meant to bring to mind Pinch Provisions' federally registered MINIMERGENCY mark.

41.     On information and belief, the Knockoff Kit is being sold nationwide at GLG's Laila Rowe stores.

42.     Although it is not evident from its packaging, once opened, the products in the Knockoff Kit appear to be of a lower quality than the components which make up the Minimergency Kit.  The Knockoff Kit contains fewer products inside, and is missing the hair spray, breath freshener, lip balm, tampon and pain reliever included in the Minimergency Kit. The Knockoff Kit is also missing a deodorant towelette, although it is (falsely) advertised as including one.  And, the clear nail polish in the Knockoff Kit fails to comply with FDA labeling regulations.

43.     Upon learning that GMA was offering the Knockoff Kit at Ulta and online, Pinch Provisions sent an agent to one Bed Bath & Beyond store in Downers Grove, Illinois on

February 15, 2013 to investigate whether Bed Bath & Beyond was also stocking the Knockoff Kit. Pinch Provisions did not find any Knockoff Kits for sale at that particular Bed Bath & Beyond location, but did find additional Counterfeit Kits on the shelves.

**COUNT I**
**COUNTERFEITING**
**15 U.S.C. § 1114(a)**

44.     Pinch Provisions hereby incorporates paragraphs 1–43 of the Complaint by reference as if fully set forth herein.

45.     Section 1114(a) of the Lanham Act prohibits the unauthorized use of any reproduction, counterfeit, copy or colorable imitation of a registered trademark in a way that is likely to cause confusion in the marketplace concerning the source of products offered for sale.

46.     Pinch Provisions has a current federal trademark registration covering the MINIMERGENCY mark on novelty "emergency kits."   The registration is valid and enforceable, and constitutes *prima facie* evidence of Plaintiff's exclusive rights to use the MINIMERGENCY mark in commerce in the United States, the State of Illinois, and this Judicial District.

47.     Pinch Provisions has a valid and protectable trade dress in the Minimergency Dress, *i.e.*, the inherently distinctive and nonfunctional packaging design of the Minimergency Kits.

48.     Without the consent of Pinch Provisions, Defendants have defaced legitimate Minimergency Kits bearing the MINIMERGENCY mark and Minimergency Dress by adding Defendants' own "CAPELLI" mark to the kits, thus rendering them counterfeit.   Defendants have caused the counterfeit kits to be sold in interstate commerce at retailers such as Bed Bath & Beyond.

49.     Defendants have thus engaged in counterfeiting, in violation of Section 32 of the Lanham Act.  Defendants' acts of counterfeiting are knowing and willful.

50.     Defendants' acts of counterfeiting have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to the business, reputation and goodwill that Pinch Provisions enjoys in its registered MINIMERGENCY mark and Minimergency Dress, for which Pinch Provisions has no adequate remedy at law.

51.     As a direct and proximate result of Defendants' willful violation of the Lanham Act, Pinch Provisions has suffered damages in an amount to be proven at trial.

52.     This is an exceptional case and Pinch Provisions is entitled to recover reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

WHEREFORE, Plaintiff ARLINGTON SPECIALTIES, INC., d/b/a PINCH PROVISIONS, requests that this Court enter judgment in its favor and against Defendants, for injunctive relief and damages available under the Lanham Act in an amount to be proven at trial, together with interest and costs, as well as reasonable attorneys' fees.

## COUNT II
## FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114(a)

53.     Pinch Provisions hereby incorporates paragraphs 1–52 of the Complaint by reference as if fully set forth herein.

54.     Section 1114(a) of the Lanham Act prohibits the unauthorized use of any reproduction, counterfeit, copy or colorable imitation of a registered trademark in a way that is likely to cause confusion in the marketplace concerning the source of products offered for sale.

55.     Pinch Provisions has a current federal trademark registration covering the MINIMERGENCY mark on novelty "emergency kits."  The registration is valid and enforceable, and constitutes *prima facie* evidence of Plaintiff's exclusive rights to use the

MINIMERGENCY mark in commerce in the United States, the State of Illinois, and this Judicial District.

56.　　Without the consent of Pinch Provisions, Defendants have used the Infringing Mark in commerce, to promote survival kit products that are directly competitive with the Minimergency Kits.  Defendants have marketed products under the Infringing Mark in the same channels of trade that Pinch Provisions employs to market its various Minimergency Kits.

57.　　Defendants' unauthorized use of the Infringing Mark is likely to cause confusion, mistake or deceit among consumers.

58.　　Defendants' have engaged in trademark infringement, in violation of Section 32 of the Lanham Act.  Defendants' acts of infringement are knowing and willful.

59.　　Defendants' acts of infringement have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to the business, reputation and goodwill that Pinch Provisions enjoys in its registered marks, for which Pinch Provisions has no adequate remedy at law.

60.　　As a direct and proximate result of Defendants' willful violation of the Lanham Act, Pinch Provisions has suffered damages in an amount to be proven at trial.

61.　　This is an exceptional case and Pinch Provisions is entitled to recover reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

WHEREFORE, Plaintiff ARLINGTON SPECIALTIES, INC., d/b/a PINCH PROVISIONS, requests that this Court enter judgment in its favor and against Defendants, for injunctive relief and damages available under the Lanham Act in an amount to be proven at trial, together with interest and costs, as well as reasonable attorneys' fees.

<u>COUNT III</u>
**FEDERAL TRADE DRESS INFRINGEMENT**
**15 U.S.C. § 1125(a)**

62.     Pinch Provisions hereby incorporates paragraphs 1–61 of the Complaint by reference as if fully set forth herein.

63.     Section 1125(a) of the Lanham Act prohibits the unauthorized use, in connection with any goods or any container for goods, of trade dress which is likely to cause confusion, mistake or deception in the marketplace concerning the source of products offered for sale.

64.     Pinch Provisions has for years worked to develop the goodwill in its inherently distinctive and nonfunctional packaging trade dress as used on the Minimergency Kits. Pinch Provisions has invested considerable resources in developing its trade dress design and in promoting its Minimergency Kits by use of this design. The consuming public identifies the Minimergency Dress with Pinch Provisions or a single unidentified source. The Minimergency Dress is a symbol of quality and goodwill that consumers can trust.

65.     Without the consent of Pinch Provisions, Defendants have intentionally copied the Minimergency Dress in order to unfairly appropriate Pinch Provisions' goodwill and divert Pinch Provisions' customers.

66.     Defendants have used the Infringing Dress in commerce, to promote survival kit products that are directly competitive with the Minimergency Kits. Defendants have marketed products under the Infringing Dress in the same channels of trade that Pinch Provisions employs to market its various Minimergency Kits.

67.     Defendants' unauthorized use of the Infringing Dress is likely to cause confusion, mistake or deceit among consumers.

68.     Defendants' have engaged in trade dress infringement, in violation of Section 43(a) of the Lanham Act. Defendants' acts of infringement are knowing and willful.

69. Defendants' acts of infringement have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to the business, reputation and goodwill that Pinch Provisions enjoys in its Minimergency Dress, for which Pinch Provisions has no adequate remedy at law.

70. As a direct and proximate result of Defendants' willful violation of the Lanham Act, Pinch Provisions has suffered damages in an amount to be proven at trial.

71. This is an exceptional case and Pinch Provisions is entitled to recover reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

WHEREFORE, Plaintiff ARLINGTON SPECIALTIES, INC., d/b/a PINCH PROVISIONS, requests that this Court enter judgment in its favor and against Defendants, for injunctive relief and damages available under the Lanham Act in an amount to be proven at trial, together with interest and costs, as well as reasonable attorneys' fees.

## COUNT IV
## FEDERAL UNFAIR COMPETITION
## 15 U.S.C. § 1125(a)

72. Pinch Provisions hereby incorporates paragraphs 1–71 of the Complaint by reference as if fully set forth herein.

73. This Count is to remedy acts of false designation of origin and/or false description and representation in commerce under 15 U.S.C. § 1125(a). Defendants' conduct is likely to cause confusion, mistake, or deceit as to the affiliation, connection, or association of Pinch Provisions with Defendants and as to the origin, sponsorship, or approval of Defendants' products by Pinch Provisions

74. Defendants' foregoing acts constitute unfair competition, in violation of Section 43(a) of the Lanham Act. Defendants' unlawful acts are knowing and willful.

75.     Defendants' wrongful conduct has deprived, and will continue to deprive, Pinch Provisions of opportunities for controlling and expanding its goodwill.

76.     Defendants' acts of unfair competition have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to the business, reputation and goodwill Pinch Provisions enjoys in its registered marks, for which Pinch Provisions has no adequate remedy at law.

77.     As a direct and proximate result of Defendants' willful violation of the Lanham Act, Pinch Provisions has suffered damages in an amount to be proven at trial.

78.     This is an exceptional case and Pinch Provisions is entitled to recover reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

WHEREFORE, Plaintiff ARLINGTON SPECIALTIES, INC., d/b/a PINCH PROVISIONS, requests that this Court enter judgment in its favor and against Defendants, for injunctive relief and damages available under the Lanham Act in an amount to be proven at trial, together with interest and costs, as well as reasonable attorneys' fees.

## COUNT V
## ILLINOIS UNFAIR TRADE PRACTICES
### 815 ILCS 510/1 *et seq.*

79.     Pinch Provisions hereby incorporates paragraphs 1–78 of the Complaint by reference as if fully set forth herein.

80.     This Count is to remedy violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et. seq.*

81.     Defendants' use of the Infringing Mark and Infringing Dress has caused, and is likely to cause in the future, a likelihood of confusion or misunderstanding as to the sponsorship, approval, affiliation or connection of Pinch Provisions to Defendants and their products.

82.     By virtue of the foregoing acts, Defendants have engaged in unfair and deceptive trade practices in the course of Defendants' business, in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et. seq.*  Defendants' unlawful acts are knowing and willful.

83.     Defendants' wrongful activities have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to the business, reputation and goodwill enjoyed in the MINIMERGENCY mark and the Minimergency Dress, for which Pinch Provisions has no adequate remedy at law.

84.     Pinch Provisions is entitled to recover its reasonable attorneys' fees and costs pursuant to 815 ILCS 510/3.

WHEREFORE, Plaintiff ARLINGTON SPECIALTIES, INC., d/b/a PINCH PROVISIONS, requests that this Court enter judgment in its favor and against Defendants, for injunctive relief and damages available under the Illinois Uniform Deceptive Trade Practices Act in an amount to be proven at trial, together with interest and costs, as well as reasonable attorneys' fees.

## COUNT VI
## ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES
## 815 ILCS 505/1 *et seq.*

85.     Pinch Provisions hereby incorporates paragraphs 1–84 of the Complaint by reference as if fully set forth herein.

86.     This Count is to remedy violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et. seq.*

87.     Defendants' unauthorized use of the Infringing Mark and Dress has caused, and is likely to cause in the future, a public injury and a detrimental effect on consumers as to the origin of Defendants' products and services.  Said acts constitute unfair methods of competition and

unfair or deceptive acts or practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et. seq.* Defendants' unlawful acts are knowing and willful.

88.     Defendants' wrongful activities have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to the business, reputation, and goodwill Pinch Provisions enjoys in its Pinch Provisions Family of Marks, for which Pinch Provisions has no adequate remedy at law.

89.     Pinch Provisions is entitled to recover its reasonable attorneys' fees and costs pursuant to 815 ILCS 505/10a.

WHEREFORE, Plaintiff ARLINGTON SPECIALTIES, INC., d/b/a PINCH PROVISIONS, requests that this Court enter judgment in its favor and against Defendants, for injunctive relief and damages available under the Illinois Consumer Fraud and Deceptive Business Practices Act in an amount to be proven at trial, together with interest and costs, as well as reasonable attorneys' fees.

<u>COUNT VII</u>
**BREACH OF CONTRACT (AGAINST DEFENDANT GLG)**
**ILLINOIS LAW**

90.     Pinch Provisions hereby incorporates paragraphs 1–89 of the Complaint by reference as if fully set forth herein.

91.     This Count is to remedy breach of a contract governed by Illinois law.

92.     As a condition of sale, GLG agreed to abide by the terms of Pinch Provisions' Vendor Policy, which are valid contractual terms enforceable against GLG.

93.     Pinch Provisions met each of its contractual obligations to GLG.

94.     Notwithstanding the terms of the Vendor Policy, Defendant GLG knowingly and willfully violated the terms of the Vendor Policy, by distributing and selling Pinch Provisions Minimergency Kits to third party retailers.

95.     Notwithstanding the terms of the Vendor Policy, Defendant GLG knowingly and willfully violated the terms of the Vendor Policy, by altering Minimergency Kit packaging.

96.     The actions of GLG constituted a breach of its contractual obligations to Pinch Provisions, causing damage to Pinch Provisions in an amount to be proven at trial.

WHEREFORE, Plaintiff ARLINGTON SPECIALTIES, INC., d/b/a PINCH PROVISIONS, requests that this Court enter judgment in its favor and against Defendant GLG, for injunctive relief and damages available under Illinois law in an amount to be proven at trial, together with interest and costs, as well as reasonable attorneys' fees.

## COUNT VIII
## TORTIOUS INTERFERENCE
## ILLINOIS LAW

97.     Pinch Provisions hereby incorporates paragraphs 1–96 of the Complaint by reference as if fully set forth herein.

98.     This Count is to remedy acts of tortious interference with prospective business relations, pursuant to Illinois law.

99.     Pinch Provisions had a reasonable expectation of commencing a business relationship with a third party that is not affiliated with either Pinch Provisions or Defendants. Such business relationship offered the probability of future economic benefit.

100.    Upon information and belief, Defendants were aware of Pinch Provisions' prospective business relationship.  Defendants have engaged in a course of conduct that was intended to, and in fact did, interfere with that relationship.  Defendants created a knockoff

product to appropriate Pinch Provisions' goodwill and to siphon off sales that otherwise would have gone to Pinch Provisions.

101.    Defendants have interfered with Pinch Provisions' ability to sell its products directly to third party retailers on favorable terms.  Defendants' behavior was not privileged, and they acted with malice, as they knew their actions would injure Pinch Provisions economically.

102.    As a direct and proximate result of Defendants' conduct, Pinch Provisions has suffered, is suffering and will continue to suffer financial and other damage in an amount to be proven at trial.

103.    Defendants' acts will continue and will cause irreparable injury to Pinch Provisions unless enjoined by this Court.

WHEREFORE, Plaintiff ARLINGTON SPECIALTIES, INC., d/b/a PINCH PROVISIONS, requests that this Court enter judgment in its favor and against Defendant GLG, for injunctive relief and damages available under Illinois law in an amount to be proven at trial, together with interest and costs, as well as reasonable attorneys' fees.

## PRAYER FOR RELIEF

As a direct and proximate result of Defendants' conduct, Plaintiff ARLINGTON SPECIALTIES, INC., d/b/a PINCH PROVISIONS, seeks the following relief:

A.  Preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116, enjoining and restraining Defendants from the unlawful and unfair acts and conduct set forth above, and enjoining Defendants from using the Infringing Mark and the Infringing Dress, or any other reproduction, copy or colorable imitation of the MINIMERGENCY mark or Minimergency Dress, for any purpose;

B.  An order directing Defendants to file with this Court and serve on Pinch Provisions within thirty (30) days after service of an injunction a written report under oath setting forth in detail the manner and form in which Defendants have complied with the injunction pursuant to 15 U.S.C. § 1116;

C.  An order requiring Defendants and all those in privity with them to surrender for destruction all materials incorporating or reproducing the Infringing Mark or Dress, pursuant to 15 U.S.C. § 1118 and the equitable power of this Court;

D.  An order requiring an accounting of the gains and profits realized by Defendants from their wrongful acts of trademark infringement, trade dress infringement, unfair competition, counterfeiting, unfair and deceptive trade practices, and consumer fraud and deceptive business practices;

E.  For an order requiring Defendants to pay to Pinch Provisions:

   i.  statutory damages;

   ii.  actual damages;

   iii.  all profits wrongfully derived by Defendants from their acts of infringement;

   iv.  increased and punitive damages as allowed by law;

   v.  costs and expenses, including without limitation reasonable attorneys' fees; and

   vi.  prejudgment interest at the maximum legal rate;

F.  That this case be deemed "exceptional" within the meaning of the Lanham Act, 15 U.S.C. § 1117; and

G.  Any additional relief that this Court deems just and appropriate.

## JURY DEMAND

Plaintiff ARLINGTON SPECIALTIES, INC., d/b/a PINCH PROVISIONS., hereby demands and requests a trial by jury on all issues so triable.

Dated: February 26, 2013                          Respectfully submitted,

                                                  ARLINGTON SPECIALTIES, INC.
                                                  d/b/a PINCH PROVISIONS

                                                  By:    /s/ Jami A. Gekas
                                                         One of its attorneys

Jami A. Gekas
Tanya H. Miari
Edwards Wildman Palmer LLP
225 West Wacker Drive, Suite 3000
Chicago, Illinois  60606-1229
Telephone: (312) 201-2000
Facsimile: (312) 201-2555